# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| CONEX HOLDINGS, LLC, et al. | : | Case No. 11-10501(CSS) |
| | : | |
| Debtors. | : | Jointly Administered |
| _____ | : | |
| | : | |
| CHARLES A. STANZIALE, JR., in his | : | |
| capacity as the Chapter 7 Trustee of | : | |
| Conex International, LLC, f/k/a | : | |
| Conex International Corporation, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Adv. Proc. No. 13-50941 (CSS) |
| v. | : | |
| | : | |
| HEICO HOLDINGS, INC., RONALD | : | |
| W. SCHUSTER; E.A. ROSKOVENSKY; | : | |
| DAMIEN W. KOVARY; LAWARENCE | : | |
| G. WOLSKI; DOUGLAS A. | : | |
| JOHNSON; DAN M. SCHRAMM; | : | |
| EMILY HEISLEY STOECKEL; STANLEY | : | |
| H. MEADOWS; GARY A RADUENZ; | : | |
| DAVID VAN VLEET; AND | : | |
| MICHAEL MOORHOUSE, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION[1]

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

**COUSINS CHIPMAN & BROWN, LLP**

William E. Chipman, Jr.
Mark D. Olivere
1007 North Orange Street, Suite 1110
Wilmington, DE  19801
    -and-
**SPERLING & SLATER, P.C.**
Bruce S. Sperling
Robert D. Cheifetz
55 W. Monroe, Suite 3200
Chicago, IL  60603

Counsel for Certain Individual Defendants

**McCARTER & ENGLISH, LLP**

Katharine L. Mayer
405 N. King Street, 8th Floor
Wilmington, DE  19801
    -and-
Charles A. Stanziale, Jr.
Jeffrey T. Testa
Michael J. Reynolds
Four Gateway Center
100 Mulberry Street
Newark, NJ  07102

Counsel to Plaintiff, Charles A. Stanziale, Jr., the Chapter 7 Trustee

Dated:  August 8, 2014

Sontchi, J. _Clford Sntl_

## INTRODUCTION

Charles A. Stanziale, Jr., Chapter 7 Trustee (the "Trustee") for Conex International, LLC ("Conex") filed a complaint[2] alleging breaches of fiduciary duties, among other things, against Ronald W. Schuster, E.A. Roskovensky, Damien W. Kovary, Lawrence G. Wolski, Douglas A. Johnson, Dan M. Schramm, Emily Heisley Stoeckel, Stanley H. Meadows, Gary A. Raduenz, David Van Vleet, and Michael Moorhouse (collectively the "Individual Defendants").  In Count V of the Complaint, the Trustee alleges that the Individual Defendants were directors and officers of Conex as well as of Heico, or Heico

---

[2] The Trustee subsequently filed an amended complaint to modify and correct the docket entry.  (D.I. 3). The complaint itself has not been modified.  The amended complaint shall be referred to herein as the "Complaint."

divisions that directly or indirectly controlled the Debtor.[3]  In that capacity, they allegedly caused Conex, while insolvent, to stop paying certain creditors and to pay fraudulent transfer and preference payments to Heico.[4]

In response, the Individual Defendants filed motions to dismiss this count of the Complaint for failure to plead adequate facts in support of the fiduciary duty claims (collectively, the "Motions to Dismiss").[5]  It is these Motions to Dismiss that are before the Court.

For the reasons set forth below, the Court grants without prejudice the Motion to Dismiss Count V.[6]  The Trustee has not provided adequate facts in support of his claims; however, the Court grants the Trustee leave to amend the Complaint within thirty (30) days of the issuance of this opinion to adequately plead facts to support his breach of fiduciary duty claims against the Individual Defendants arising from the payments made from Conex to Heico.

---

[3]  Complaint at ¶ 80.

[4]  Complaint at ¶ 81.

[5]  The Trustee also filed claims against William Harrington and Ted Williams.  Harrington and Williams are also defendants in another adversary proceeding (Adv. Proc. No. 13-50845) initiated by the Trustee in the Conex bankruptcy.  As part of a settlement reached in that adversary proceeding, the parties agreed that Harrington and Williams would be dismissed with prejudice from the instant action upon consummation of the settlement.  The Court approved the settlement on May 30, 2014.  The settlement was consummated on or about June 17, 2014.

[6] More specifically, the Court dismisses without prejudice the claim based on Texas common law as to fiduciary duties but dismisses with prejudice the claims under section 3.307 of the Texas Business and Commerce Code and for deepening insolvency.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(O).

## STATEMENT OF FACTS

### A.   Procedural History

On February 20, 2011 (the "Petition Date"), certain lenders of Conex Holdings, LLC, Conex, and Advantage Blasting & Coating, Inc. (collectively, the "Debtors") filed involuntary petitions for relief under Chapter 11 of the Bankruptcy Code.  On February 24, 2011, the Court entered an order for relief under Chapter 7 of the Bankruptcy Code.[7] Shortly thereafter, Charles A. Stanziale, Jr. was appointed as Chapter 7 trustee.  On April 22, 2013, the Trustee initiated this adversary proceeding against Heico and the Individual Defendants seeking to avoid prepetition transfers pursuant to §§ 547, 548 and 550 of the Bankruptcy Code and to delay or to disallow any claims held by Heico pursuant to § 502(d) of the Bankruptcy Code.[8]  Additionally, in Count V of the Complaint, the Trustee seeks entry of a judgment against the Individual Defendants for their breach of fiduciary duties pursuant to, among other things, the common law and § 3.307 of the Texas Business and Commerce Code.  Motions to dismiss Count V were filed by (1) Harrington and Williams, and (2) Schuster, Roskovensky, Kovary, Wolski, Johnson, Schramm,

---

[7] D.I. 21.

[8] Adv. D.I. 1.

Meadows, Raduenz, Van Vleet and Moorhouse.[9]   The Trustee filed an objection to the

Motion to Dismiss.[10]    The Individual Defendants filed a reply brief in support of their

Motion to Dismiss.[11]  Briefing is complete and the matter is ripe for decision.

### B.    Parties

Conex was a general mechanical contractor.  It provided industrial services to

refining, petrochemical, and other processing industry customers.   Conex, an LLC,

continued the operations of Conex International Corporation ("CIC") following CIC's

conversion to a Texas limited liability company.[12]  The Trustee was duly appointed as the

Trustee of Conex.

Conex Holdings, LLC ("Holdings") is a Delaware limited liability company with

its principal place of business in Chicago, Illinois.  Holdings owns 100% of all interests

 in Conex.  Heico Holding Inc. ("Heico") is an Illinois corporation with its principal place

of business in Illinois.  Heico owns 100% of all interests in Holdings.

The Individual Defendants subject to the fiduciary duty claim in Count V of the

Complaint can be divided into three groups.[13]

First, those who allegedly have been officers or directors of Heico and Conex:

Roskovensky (President and CEO of Heico and officer of Conex), Wolski (CFO of Heico

---

[9] Adv. D.I. 34 and 35 (the "Motion to Dismiss").  Williams and Harrington filed a separate motion to dismiss but the claims against Harrington and Williams have been voluntarily dismissed.  Thus, their motion to dismiss is moot.

[10]  Adv. D.I. 45.

[11]  Adv. D.I. 48.

[12]  Complaint at ¶¶ 23 and 24.

[13]  Complaint at ¶¶ 10 - 22.

and officer of Conex), Johnson (VP and Secretary of Heico and officer of Conex), Schramm

(Assistant Secretary of Heico and officer of Conex) and Meadows (Director of Heico and

officer of Conex);

Second, those who allegedly have been officers of Conex as well as officers,

directors or in another position at Heico-affiliated entities, but not at Heico itself: Kovary

(Managing Director of Heico Acquisition, LLC and officer of Conex), Schuster (an

individual with last known business address of The Heico Companies and an officer of

Conex), Raduenz (an individual with last known business address of Antioch Tire Inc.,

d/b/a Tredroc Tire Services and General Counsel for The Heico Companies, and an

officer of Conex), Van Vleet (an individual with last known business address of

Robertson-Ceco Corporation and Assistant General Counsel of The Heico Companies

and an officer of Conex); Moorhouse (VP and CFO of Heico Construction Group, LLC

and an officer of Conex), and Stoeckel (President and Chief Executive Officer of Heico

Construction Group, LLC and officer of Conex);

Third, those who allegedly have only been officers of Conex: Harrington and

Williams.[14]

In Count V of the Complaint, the Trustee elaborates as to the Individual

Defendants' positions with the Debtor and Heico. He alleges that "Conex's Directors and

Officers were all officers, members, or persons in control of [Conex], directly or

indirectly."[15] He then asserts, "the Directors and Officers were all officers, members or

---

[14] The claims against Harrington and Williams have been dismissed.

[15] Complaint at ¶ 79.

persons in control of Heico, or Heico divisions that directly or indirectly controlled the [Conex]."[16]

### C.    Factual Background

On August 7, 2008, the day Conex was converted from a Texas corporation to a Texas LLC, Holdings bought the interests of Conex in a $246 million leveraged buy-out.[17] The next day (the "Closing Date"), Heico, through Holdings, acquired the membership interests in Conex as well as the stock of Advantage Blasting & Coating, Inc. ("ABC") in exchange for $234,130,000 in cash and certain contingent and deferred payments.[18] Heico's structure of the sales transaction allegedly left Conex with significant debt and insufficient capital.   According to the Complaint, "the purchase price was funded through a capital contribution to Conex from Heico in the amount of $77.8 million and bank loans to Conex totaling $163,975,000."[19]   The loans were secured by all of Conex's and ABC's assets.   Conex allegedly received only $1,449,884 of the $234 million cash payment.  The remainder of the money was used to cash-out former shareholders and to pay professionals, as well as bank and transaction fees.[20]

On the Closing Date, Conex allegedly did not have sufficient working capital to be able to meet its future cash payments.  Almost immediately after the Closing Date, with

---

[16]  Complaint at ¶ 80.

[17]  Complaint at ¶ 31.

[18]  Complaint at ¶ 32.

[19]  *Id*.

[20]  Complaint at ¶ 33.

Heico controlling Conex, Conex became insolvent.[21]   At the end of 2008, Conex had a negative working capital.  Pursuant to the Complaint, "its current liabilities exceeded its current assets by approximately $18 million."[22]   At the end of 2009, Conex's current liabilities exceeded its current assets by $156 million and by the end of 2010 by $173 million.

Conex's sales revenue, gross profit and net income deteriorated significantly shortly after the Closing Date.  For the first eight months of 2008, Conex's contract revenue was approximately $197.6 million, its gross profit approximately $37.3 million, and its net income $35.2 million.[23]   These numbers dropped to approximately $76.6 million, $14.3 million, and $4.85 million respectively during the remainder of 2008.  The operating results further deteriorated in 2009 and only slightly improved for 2010.  At the end of December 2009, "Conex's contract revenue was approximately $111.4 million, a decrease of approximately $162.8 million from 2008's full year contract revenue and a decrease of approximately $93 million from 2007's full year contract revenue."[24]

In 2009, less than 11 months after the Closing Date, Conex defaulted under its credit agreement and stopped paying its bank debt.  At the same time, the transfers to Heico commenced, which allegedly continued until the filing of the involuntary bankruptcy petition.[25]   Heico allegedly "authorized and directed" Conex to make

---

[21] Complaint at ¶ 35.

[22] *Id.*

[23] Complaint at ¶ 36.

[24] Complaint at ¶ 37.

[25] Complaint at ¶ 42.

payments to Heico in the amount of $10,990,914 during the two years prior to the Petition Date.  Further, Heico allegedly received $7,144,972 in preference payments from Conex in the one year period prior to the Petition Date.[26]  These transfers were allegedly made while the Debtors did not service their bank debt.  In addition to these transfers, Heico allegedly caused the Debtor "to transfer to Heico Conex's right to collect a $614,377.65 receivable from Ceco Construction, LLC (a company that is owned and controlled by Heico)" and "to reduce its pre-paid insurance account by $402,276.50 and transfer its interest to Heico."[27]  These transfers occurred at a time at which Conex was either insolvent, rendered insolvent, or did not have enough working capital.[28]

The Trustee, in Count V of the Complaint, alleges that the Defendants "caused Conex, while insolvent, to cease paying certain creditors, and instead caused Conex to pay the fraudulent transfers and preference payments to Heico."[29]  The Trustee alleges that they therefore breached their fiduciary duties to the Debtor pursuant to the common law and section 3.307 of the Texas Business and Commerce Code.[30]  The Trustee further alleges that the Defendants "breached their fiduciary duty of good faith and fair dealing to Conex and its creditors by preferring and paying Heico at the expense of Conex's other creditors," and that their actions caused the deepening insolvency of Conex.[31]

---

[26] Complaint at ¶ 44.

[27] Complaint at ¶ 45.

[28] Complaint at ¶ 46.

[29] Complaint at ¶ 81.

[30] Complaint at ¶ 83.

[31] Complaint at ¶¶ 84 & 86.

## LEGAL DISCUSSION

### A.      Motion to Dismiss Standard

A motion under Rule 12(b)(6)[32] serves to test the sufficiency of the factual

allegations in the plaintiff's complaint.[33]   "Standards of pleading have been in the

forefront of jurisprudence in recent years."[34]   With the Supreme Court's recent decisions

in *Bell Atlantic Corp. v. Twombly*[35] and *Ashcroft v. Iqbal*,[36] "pleading standards have

seemingly shifted from simple notice pleading to a more heightened form of pleading,

requiring a plaintiff to plead more than the possibility of relief to survive a motion to

dismiss."[37]

In *Iqbal*, the Supreme Court makes clear that the *Twombly* "facial plausibility"

pleading requirement applies to all civil suits in the federal courts.[38] "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements" are

insufficient to survive a motion to dismiss.[39]   Rather, "all civil complaints must now set

---

[32]   Federal Rules of Civil Procedure 8(a) and 12(b)(6) are made applicable to this adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 7008 and 7012, respectively.

[33]   *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) ("The pleader is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." (citations omitted)).

[34]   *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209 (3d Cir. 2009).

[35]   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

[36]   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

[37]   *Fowler*, 578 F.3d at 210.

[38]   *See Fowler*, 578 F.3d at 210.

[39]   *Iqbal*, 129 S.Ct. at 1949.  *See also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (citations omitted); *Bartow v. Cambridge Springs SCI*, 285 Fed.Appx. 862, 863 (3d Cir. 2008) ("While facts must be accepted as alleged, 'this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions.'"); *General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 333 (3d Cir. 2001) ("Liberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists on which relief could be accorded the pleader.

out sufficient factual matter to show that the claim is facially plausible."[40]  A claim is

facially plausible "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."[41]

Determining, whether a complaint is "facially plausible" is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense.[42]  But

where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged-but not shown-that the pleader is

entitled to relief."[43]

After *Iqbal*, the Third Circuit has instructed this Court to "conduct a two-part

analysis.  First the factual and legal elements of a claim should be separated.  The [court]

must accept all of the complaint's well-pleaded facts as true, but may disregard any legal

conclusions."[44]  The court "must then determine whether the facts alleged in the

---

Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.  While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions." (citations omitted)).

[40] *Fowler*, 578 F.3d at 210 (internal quotations omitted).  *See also Iqbal*, 129 S.Ct at 1950 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Buckley v. Merrill Lynch & Co.* (*In re DVI, Inc.*), 2008 WL 4239120, 2008 Bankr.LEXIS 2338 (Bankr. D. Del. Sept. 16, 2008) ("Rule 8(a) requires a showing rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only fair notice, but also the grounds on which the claim rests." (citations omitted)).

[41] *Iqbal*, 129 S.Ct. at 1949.

[42] *Id*. at 1250.  "It is the conclusory nature of [plaintiff's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."  *Id*. at 1951.

[43] *Id*. at 1950 (citations and internal quotations omitted).

[44] *Fowler*, 578 F.3d at 210-11.  *See also Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (holding that a court *must* take the complaint's allegations as true, no matter how incredulous the court may be); *Iqbal*, 129 S.Ct. at 1949-50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . .  When there are well-plead factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007); *Carino v. Stefan*, 376 F. 3d 156, 159 (3d Cir. 2004).  The Court may also consider

---

complaint are sufficient to show that the plaintiff has a plausible claim for relief."[45]   The

Third Circuit has further instructed that "[s]ome claims will demand relatively more

factual detail to satisfy this standard, while others require less."[46]

### B.      Choice of Law as to Breach of Fiduciary Duty Claims

Under the "internal affairs" doctrine, because Conex is a Texas LLC, Texas law

applies to the breach of fiduciary duty claims.[47]   This Court, applying Texas law, is

required to determine "how the highest court in the state would decide the issue at

hand."[48]   If the highest court of the state has not previously addressed the precise issue,

then this Court "must predict how [that] court would resolve the issue."[49]   In deciding

the issue, this Court may "look to Delaware for guidance on matters of corporate law"

absent any conflicts with Texas law.[50]

---

documents attached as exhibits to the Complaint and any documents incorporated into the Complaint by reference. *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 183 (Bankr. D. Del. 2000) (citing *PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  "[I]f the allegations of [the] complaint are contradicted by documents made part thereof, the document controls and the Court need not accept as true allegations of the complaint."  *Sierra Invs., LLC v. SHC, Inc.* (*In re SHC, Inc.*), 329 B.R. 438, 442 (Bankr. D. Del. 2005).  *See also Sunquest Info Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F.Supp.2d 644, 649 (W.D. Pa. 1999) ("In the event of a factual discrepancy between the pleadings and the attached exhibit, the exhibit controls." (citations omitted)).

[45]   *Fowler*, 578 F.3d at 211 (internal quotations omitted) ("[A] complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." (citations omitted)).  "The plaintiff must put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim."  *Buckley v. Merrill Lynch & Co., Inc.* (*In re DVI, Inc.*), 2008 WL 4239120, at *4, 2008 Bankr.LEXIS 2338, at *13 (Bankr. D. Del. Sept. 16, 2008).

[46]   *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010).  *See also Arista Records LLC v. Doe*, 604 F.3d 110, 120-21 (2d Cir. 2010) (stating that *Twombly* and *Iqbal* require factual amplification where needed to render a claim plausible, not pleadings of specific evidence or extra facts beyond what is needed to make a claim plausible).

[47]   *See In re Jevic Holding Corp.*, No. 08-11006, 2011 WL 4345204, *13 (Bankr. D. Del. Sept. 15, 2011).

[48]   *Allstate Property and Cas. Ins. Co. v. Squires*, 667 F.3d 388, 391 (3d Cir. 2012).

[49]   *Id*. (internal citation omitted).

[50]   *See In re Aguilar*, 344 S.W.3d 41, 47-48 (Tex.  App.  2011).

### C.    Count V – Breach of Fiduciary Duty Claims

As set out more fully below, the Trustee has failed to sufficiently plead a breach of fiduciary duty claim against the Individual Defendants.

### 1. Breach of Texas Common Law Fiduciary Duties

Under Texas law, corporate directors owe three fiduciary duties: the duties of obedience, loyalty and due care.[51]  In order to state a claim for breach of fiduciary duty, a plaintiff must allege "the existence of a fiduciary duty, breach of the duty, causation, and damages."[52]

The Individual Defendants argue that the Complaint is deficient of specific allegations to support the Trustee's conclusions that the Individual Defendants breached any fiduciary duty.  In particular, the Individual Defendants contend that the Trustee has failed to state what each individual did in connection with any particular transfer and that he has failed to sufficiently put them on notice of any alleged wrongdoing.[53]  They assert that the Trustee inappropriately grouped the Individual Defendants together as "Officers and Directors" without identifying what each of the them allegedly did wrong.[54]  They further argue that Conex is a Limited Liability Company ("LLC") without officers and directors.[55]  They assert that the Trustee failed to provide facts that any of the

---

[51]  *F.D.I.C. v. Schreiner*, 892 F.Supp. 869, 882 (W.D. Tex. 1995) (citing *Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 719 (5th Cir. 1984) (addressing Texas law)).

[52]  *Las Colinas Obstetrics-Gynecology-Infertility Ass'n, P.A. v. Villalba*, 324 S.W.3d 634, 645 (Tex. App. 2010) (internal citation omitted).

[53]  Motion to Dismiss at 2.

[54]  Motion to Dismiss at 2.

[55]  Motion to Dismiss at 12.

defendants were even authorized to make binding decisions under Conex's operating agreement.[56]

The Trustee asserts that the Complaint meets the *Twombly* and *Iqbal* pleading standard and that it sufficiently puts the Individual Defendants on notice of the alleged wrongdoing.[57] To support his position that the Complaint is not "thread bare," but instead contains many factual details, the Trustee, in his oppositions to the Motion to Dismiss, recites certain paragraphs of the Complaint. For example, the Trustee asserts that:

> In June of 2009, the **Directors and Officers caused Conex**, while insolvent, to cease paying certain creditors, and instead **caused Conex** to begin paying the Fraudulent Transfer Payments and the Preference Payments to Heico, at the expense of the creditors who were not being paid and remain unpaid. (Complaint at ¶81).
>
> As **Directors and Officers of Conex**, who were exerting influence over Debtor and **essentially directing the affairs of the Debtor** at a time when the Debtor was insolvent, the Directors and Officers owed fiduciary duties to the Debtor and to the creditors of the Debtor pursuant to, among other things, the common law and sections 3.307 of the Texas Business and Commerce Code. (Complaint at ¶83).
>
> As a result of **the actions by the Directors and Officers**, Conex, and its creditors were harmed because the Fraudulent Transfer Payments and the Preference Payments made to Heico would have been available for distribution by Conex to its creditors but for the actions of the Directors and Officers. The **actions of the Directors and Officers caused the deepening insolvency** of the Debtors and the inevitable involuntary bankruptcies. (Complaint at ¶¶85-86).

---

[56] *Id.*

[57] *See, e.g.*, Trustee's Opposition to Schuster Motion to Dismiss at 6.

The Court concludes that the Trustee has failed to assert a facially plausible claim and has not meet the pleading requirements under *Twombly* and *Iqbal*. Specifically, the Trustee has failed to provide facts with any specificity to support how any of the Individual Defendants breached any fiduciary duty recognized under Texas law. Trustee's allegations constitute mere conclusory statements. Other courts reached the same conclusions.

For example, in *Kaye v. Lone Star Fund V (U.S.), L.P.*, the court dismissed claims for breach of fiduciary duty against certain individual defendants who allegedly "were [only] involved with" or "participated in certain transactions."[58] The court held that those statements "even if accepted as true, do not more than raise the possibility of liability-they do not nudge a plaintiff's claim into the territory of plausibility."[59] The Court reasoned that "such conclusory allegations are insufficient to withstand a motion to dismiss."[60] The court dismissed the claims without prejudice and permitted the plaintiff to amend his pleading as to those claims.

Similarly, in *In re Troll Communications, LLC*, the court dismissed the breach of fiduciary duty claim against certain officers because the bankruptcy trustee failed to plead sufficient facts that would identify which officers were involved in the transaction at issue to support a cause of action for a breach of a fiduciary duty.[61] The court stated,

---

[58] 453 B.R. 645, 682 (N.D. Tex. 2011) (applying Delaware law).

[59] *Id*. at 681.

[60] *Id*.

[61] 385 B.R. 110, 120 (Bankr. D. Del. 2008).

15

"the Amended Complaint's allegations regarding the officers are vague and lack sufficient detail about which officers, if any, knowingly participated in the payments."[62]

In addition, in *Bank of America, N.A. v. Knight*, the Seventh Circuit held that "liability is personal. . . . Each defendant is entitled to know what he or she did that is asserted to be wrongful.  A complaint based on a theory of collective responsibility must be dismissed."[63]   The court thus affirmed the dismissal of a complaint in which the plaintiff alleged that "officers and the KE Board caused and permitted" certain wrongdoing while being aware of the company's liquidity crisis.[64]

In sum, the Trustee has failed to satisfy the *Twombly* and *Iqbal* pleading standard. Similar to the Plaintiff in *Knight*, the Trustee lumps all of the Individual Defendants together as "Officers and Directors" (and incorrectly, at least as to the reference to "directors") without supplying specific facts as to each defendant's wrongdoing.  As in *Knight*, and partly as in *Troll Communications* and in *Kaye*, the Trustee has not provided any specific facts as to which transactions a particular defendant authorized, nor did the Trustee allege what authority any particular defendant had to approve such transactions. Similar to *Troll Communications*, the allegations are "vague and lack sufficient detail about which officers, if any, knowingly participated."  This is not a close question.  Much more specificity is needed here to satisfy the legal standard.

---

[62] *Id.*

[63] 725 F.3d 815, 818 (7th Cir. 2013).

[64] *Id.* at 819.

**2. Breach of Fiduciary Duty Pursuant to Section 3.307 of Texas Business and Commerce Code**

The Trustee alleges in Count V of the Complaint that the Individual Defendants breached their fiduciary duty under Section 3.307 of the Texas Business and Commerce Code. This allegation is wholly unsupported. Section 3.307 of the Texas Business and Commerce Code does not appear to provide for such a claim and is inapposite to the alleged facts. Thus, this claim in Count V will be dismissed with prejudice as a matter of law.[65]

---

[65] Section 3.307 of the Texas and Business Commerce Code provides:

(a) In this section:

(1) "Fiduciary" means an agent, trustee, partner, corporate officer or director, or other representative owing a fiduciary duty with respect to an instrument.

(2) "Represented person" means the principal, beneficiary, partnership, corporation, or other person to whom the duty stated in Subdivision (1) is owed.

(b) If (i) an instrument is taken from a fiduciary for payment or collection or for value, (ii) the taker has knowledge of the fiduciary status of the fiduciary, and (iii) the represented person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply:

(1) notice of breach of fiduciary duty by the fiduciary is notice of the claim of the represented person;

(2) in the case of an instrument payable to the represented person or the fiduciary as such, the taker has notice of the breach of fiduciary duty if the instrument is:

(A) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary;

(B) taken in a transaction known by the taker to be for the personal benefit of the fiduciary; or

(C) deposited to an account other than an account of the fiduciary, as such, or an account of the represented person;

(3) if an instrument is issued by the represented person or the fiduciary as such, and made payable to the fiduciary personally, the taker does not have notice of the breach of fiduciary duty unless the taker knows of the breach of fiduciary duty; and

(4) if an instrument is issued by the represented person or the fiduciary as such, to the taker as payee, the taker has notice of the breach of fiduciary duty if the instrument is:

(A) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary;

(B) taken in a transaction known by the taker to be for the personal benefit of the fiduciary; or

(C) deposited to an account other than an account of the fiduciary, as such, or an account of the represented person.

**3. Deepening Insolvency**

The Trustee further asserts that the Individual Defendants actions "caused the deepening insolvency of the Debtors."[66]  Deepening insolvency, however, is not a cause of action under Delaware or Texas law.[67]  This claim in Count V will be dismissed with prejudice.

In sum, the Trustee's allegations are "thread-bare."  However, as evidenced by some more detailed allegations the Trustee was able to provide in the briefing the Trustee appears to possess more detailed knowledge about the Individual Defendants, their alleged conduct and the alleged transfers.  Thus, this Court will allow the Trustee to amend Count V of the Complaint within thirty (30) days of the issuance of an order to make more specific allegations in support of his claim for breach of fiduciary duty under Texas common law.  Fed. R. Civ. P. 15(a) ("[A] party may amend the party's pleading . . . by leave of court . . . and leave shall be freely given when justice so requires."  Specifically, the Trustee must specify the relationship of each individual to Conex and how and which "officer or director" or any other individual breached a fiduciary duty recognized under Texas law with respect to the payments to Heico.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss Count V of the Complaint will be granted, in part, with prejudice and, in part, without prejudice.  The Trustee will

---

[66] Complaint at ¶ 86.

[67] *In re Vartec Telecom, Inc.*, 335 B.R. 631, 644 (Bankr. N.D. Tex. 2005); *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 204 (Del. Ch. 2006).

be given an opportunity to amend the Complaint within 30 days of the issuance of this opinion to include specific allegations to support his breach of fiduciary duty claims under Texas common law against the Individual Defendants.  The claims based upon section 3.307 of the Texas Business Commerce Code and for deepening insolvency will be dismissed with prejudiced.

An order will be issued.